Melinda Driscoll
FRED LAW FIRM, PLLC
214 N. 24th Street
P.O. Box 2157
Billings, MT 59103-2157
406.294.8396
406.294.8398 (fax)
mdriscoll@fredlawfirm.com

*Attorneys for Plaintiff*

## MONTANA NINTH JUDICIAL DISTRICT COURT, TOOLE COUNTY

| | |
|---|---|
| NATHANIEL LAKE,<br><br>Plaintiff,<br>vs.<br><br>CORECIVIC, LLC, d/b/a CROSSROADS CORRECTIONAL CENTER; WARDEN PAT MCTIGHE; TODD HORN and DOES 1-10.<br><br>Defendants. | Cause No.<br>Judge Robert G. Olson<br><br>**COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiff Nathaniel Lake, by and through his attorney, Melinda A. Driscoll of Fred Law Firm, PLLC, sets forth his Complaint & Jury Trial Demand and alleges as follows:

### THE PARTIES

1.  At all times relevant hereto, Plaintiff Nathaniel Lake has been a citizen of the State of Montana. He is currently a resident of Kalispell, Montana.

2.      Defendant CoreCivic, LLC is a Tennessee limited liability company doing business as Crossroads Correctional Center ("CCC") in Shelby, Montana.

3.      At all times relevant hereto, Defendant Todd Horn was employed as a correctional officer at CCC in Shelby, Montana. He is being sued in his individual capacity.

4.      At all relevant times, Defendant Pat McTighe was the warden at CCC in Shelby, Montana. For all allegations contained herein, then-Warden McTighe is being sued in his official and individual capacities.

5.      Doe Defendants 1-10 are individuals who committed tortious acts within the scope of events set forth in Plaintiff's Factual Allegations; who were responsible for Plaintiff's care and custody on September 17, 2018; who were responsible for maintaining security at the CCC facility on September 17, 2018; and/or were responsible for classification of offenders who were involved in the September 17, 2018, assault of Plaintiff Nathan Lake. The true names and individual liabilities of Doe defendants will be promptly supplemented upon discovery of same.

## JURISDICTION AND VENUE

6.      This action arises under the United States and Montana Constitutions, 42 U.S.C. § 1983, and Montana law.

7.      The District Court has subject matter jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. § 1983; 42 U.S.C. § 1988; and Mont. Code Ann. § 3-5-302.

8. The District Court has personal jurisdiction over Defendants pursuant to Mont. R. Civ. P. 4(b)(1)(B).

9. Venue is proper in the Ninth Judicial District because the events giving rise to Plaintiff's claims occurred in Toole County, Montana. *See* Mont. Code Ann. § 25-2-121.

## FACTUAL ALLEGATIONS

10. Defendant CoreCivic, formerly known as Corrections Corporation of America, is the nation's largest provider of private detention facilities. CoreCivic reported revenues of almost $2 billion in 2020.

11. CoreCivic has been named in multiple lawsuits around the country arising from inmate injuries and deaths inflicted by other inmates. A 2016 U.S. Department of Justice ("DOJ") audit revealed that CoreCivic staffing has routinely been insufficient to provide a safe and secure environment, and that, throughout the reporting period, CoreCivic had manipulated numbers in its federal reporting scheme to inaccurately reflect enhanced levels of staffing.

12. On January 26, 2021, President Biden issued an Executive Order directing the DOJ not to renew contracts with privately operated criminal detention facilities, including all of those operated by CoreCivic, noting that such facilities do not provide safe living or working conditions as compared to their government-operated counterparts.

13. CoreCivic has a system-wide custom, policy, and practice of prioritizing profits over providing a secure, safe, and healthy environment for its various constituencies.

14. Consistent with its policy, custom, and practice which prioritizes profit over safety and security, CoreCivic and CCC have maintained a custom, policy, and practice of minimizing payroll — in turn, failing to provide adequate staffing and supervision to meet the safety and security needs of the facility. The few staff that *are* present are worked to the point of exhaustion, exacerbating the safety and security risks created by perpetual understaffing.

15. Consistent with its policy, custom, and practice which prioritizes profit over safety and security, CoreCivic and CCC have maintained a custom, policy, and practice of minimizing the costs of professional development — in turn, failing to provide adequate training to staff.

16. On September 17, 2018, Plaintiff Nathaniel Lake ("Lake") was in CoreCivic/CCC custody when he was nearly beaten to death by Inmate Reid Danell ("Danell"). Because of the substantial head trauma, Lake has no memory of the attack.

17. Lake had a significant history of mental health issues and was designated as a sex offender when the assault occurred. These factors made him far more vulnerable to attack than other similarly-situated inmates, even though Lake remained adamant

that he was innocent of the sexual offense for which he was convicted and committed.

18. Danell has been incarcerated since 1999. He is serving two life sentences for a double homicide he committed when he was 18 years old. The double homicide arose from Danell's attempt to be initiated into the "LVL 13" gang, which is a Surenos subgroup.

19. CCC security footage showed that Danell exited the main door of CCC's D-Pod, where he was housed, and swiftly walked down the hall to E-Pod. Danell entered through the main door to E-Pod, went up the stairs, and directly into E-Pod cell 220, where Lake was housed.

20. Danell entered cell 220. Within one minute, Lake's cellmate, Mark Funk ("Funk"), was shown exiting the cell briefly before trying to re-enter. Inmate Domonic Rodriguez ("Rodriguez") was nearby. As Funk attempted to re-enter the cell, Rodriguez pulled Funk out and shut the cell door.

21. Rodriguez returned to his own cell on the first floor, E-Pod cell 114. After Danell exited Lake's cell, he reported to cell 114 before exiting the pod the same way he entered. On information and belief, Rodriguez is also affiliated with the Surenos, which are a law enforcement designated Security Threat Group.

22. No CCC staff intervened in the attack on Lake, and Danell was allowed to freely roam the prison between units without staff intervention.

23. Officer Todd Horn later discovered Lake unconscious in cell 220. Lake was taken to Great Falls Benefis Hospital via ambulance. He was kept on life support for several weeks before being returned to CCC's infirmary unit, where he began teaching himself to walk and talk again.

24. Danell admitted that he went to E-pod for the sole purpose of assaulting Lake, and that he threatened to kill Funk if Funk intervened in the assault.

25. Danell was criminally charged with two counts of aggravated assault. He plead guilty to the first count and was sentenced to 15 years at Montana State Prison with no time suspended.

26. On July 30, 2019, while Lake was still being held in CCC's infirmary unit, the Montana Supreme Court vacated Lake's conviction for attempted sexual intercourse without consent. Lake was determined to walk out of CCC, and with a great deal of time and effort, and assistance from his family, he succeeded.

27. The State was given the option to retry Lake, but the Missoula County Attorney's Office declined to refile. Lake now has no criminal record.

28. Lake continues to suffer significant permanent physical and mental effects, including speech, gait, and memory impairment, arising from the traumatic brain injury he suffered while confined under CCC's supervision. He will likely require care for the rest of his life.

//

## COUNT I – NEGLIGENCE
### (As to all Defendants)

29. Plaintiff realleges each previous paragraph as though fully set forth herein.

30. Defendants owed Lake a duty to act with reasonable care.

31. CoreCivic and then-Warden Pat McTighe had a duty to act with reasonable care in crafting and implementing appropriate policies and procedures to maintain adequate supervision, facility security, and to protect the safety of inmates and staff at CCC.

32. CoreCivic and Warden McTighe had a duty to implement policies and procedures consistent with standards set forth by government entities and accrediting bodies.

33. CoreCivic has a duty to monitor its facilities for compliance with all such policies and procedures, and Warden McTighe had a duty to ensure compliance at CCC.

34. CoreCivic and Warden McTighe had a duty to ensure that CCC was adequately staffed, and that staff are adequately trained on all matters related to the supervision, security, and safety of residents and staff.

35. CoreCivic and its agents, including Warden Pat McTighe, Officer Todd Horn, and Does 1-10 had a duty to ensure that policies and procedures regarding inmate supervision, security, and safety were followed within the scope of their respective individual authority.

36. Defendants CoreCivic and Warden Pat McTighe breached the duty to act with reasonable care by failing to implement appropriate policies and procedures regarding supervision, facility security, and staff and inmate safety.

37. CoreCivic and Warden McTighe breached the duty of reasonable care when they failed to adequately monitor CCC to enforce compliance with all relevant policies and procedures.

38. CoreCivic and Warden McTighe breached the duty to ensure that CCC was adequately staffed, and that CCC staff were adequately trained on supervision, security, and safety matters.

39. CoreCivic and its agents, including Warden Pat McTighe, Officer Todd Horn, and Does 1-10 failed to adhere to relevant policies and procedures regarding staff and inmate supervision, security, and safety.

40. Had appropriate policies and procedures regarding staffing, training, security, and/or safety been followed, Danell would not have been permitted to roam freely between pods and beat Lake to a state of unconsciousness with zero staff intervention.

41. Defendants' breach of the duty of reasonable care has directly and proximately caused significant permanent damage to Lake's physical, emotional, and mental health; has resulted in substantial ongoing pain and suffering; and will likely prevent Lake from ever achieving gainful employment.

## COUNT II – *DORWART* CLAIMS
### (As to all Defendants)

42. Plaintiff realleges each previous paragraph as though fully set forth herein.

43. Defendants are State actors and entities subject to the Montana Constitution.

44. Lake is a person protected by the Montana Constitution.

45. The Montana Constitution, Article II, § 3 provides:

> All persons are born free and have certain inalienable rights. They include the right to a clean and healthful environment and the rights of pursuing life's basic necessities, enjoying and defending their lives and liberties, acquiring, possessing and protecting property, and seeking their safety, health and happiness in all lawful ways.

5. The Montana Constitution, Article II, § 4 provides: "The dignity of the human being is inviolable. No person shall be denied the equal protection of the laws."

6. The Montana Constitution, Article II, § 22 provides: "Excessive bail shall not be required, or excessive fines imposed, or cruel and unusual punishments inflicted."

8. These Constitutional Rights are fundamental, self-executing, and violations of these rights are remedied by monetary damages.

9. At a minimum, CoreCivic and Warden McTighe had notice of the need for better training and staffing by virtue of the findings of the 2016 DOJ audit, and the

volumes of lawsuits against CoreCivic having substantially similar questions of law and fact.

10. CoreCivic and Warden McTighe's failure to adequately train and staff the CCC facility demonstrated deliberate indifference to the substantial risk of serious harm to CCC residents and staff.

11. CoreCivic and Warden McTighe's deliberate indifference regarding the substantial risk of harm arising from the failure to adequately train and staff the CCC facility was the direct and proximate cause of permanent damage to Lake's physical, emotional, and mental health; has resulted in substantial ongoing pain and suffering; and will likely prevent Lake from ever achieving gainful employment again.

12. CoreCivic and Warden McTighe's conduct has deprived Lake of the right to pursue life's basic necessities, to enjoy and defend his life and liberties, and the right to seek safety, health and happiness.

13. CoreCivic and Warden McTighe's conduct violated Lake's human dignity, and resulted in his suffering a cruel and unusual "punishment" for a conviction which has since been vacated.

### COUNT III - 42 U.S.C. § 1983
### (As to CoreCivic and Warden McTighe)

46. Plaintiff realleges each previous paragraph as though fully set forth herein.

//
//
//

47. Federal law provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

42 U.S.C. § 1983.

48. At all relevant times, Defendants acted under color of law, statutes, ordinances, rules, regulations, customs, policies, practices, and/or usages of the State of Montana. State authority has been imputed to CCC and its staff by virtue of CoreCivic's contract with the State of Montana, Montana Department of Corrections, and Montana State Prison.

49. At all relevant times, Defendants acted within to course and scope of their employment and/or under the authority conferred to them by virtue of CoreCivic's contract with the State of Montana.

50. CoreCivic and Warden McTighe deprived Lake of rights secured under the Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment. Defendants failed to protect Lake from the substantial risk of harm by failing to adequately train and staff the CCC facility.

51. CoreCivic and Warden McTighe had notice of the need for better training and staffing by virtue of the findings of the 2016 DOJ audit, and the volumes of lawsuits against CoreCivic having substantially similar questions of law and fact.

52. CoreCivic and Warden McTighe's failure to adequately train and staff the CCC facility demonstrated deliberate indifference to the substantial risk of serious harm to CCC residents and staff.

53. CoreCivic and Warden McTighe's deliberate indifference regarding the substantial risk of harm arising from the failure to adequately train and staff the CCC facility was the direct and proximate cause of permanent damage to Lake's physical, emotional, and mental health; has resulted in substantial ongoing pain and suffering; and will likely prevent Lake from ever achieving gainful employment.

## PUNITIVE DAMAGES
### (As to CoreCivic and Warden McTighe)

54. Plaintiff realleges each previous paragraph as though fully set forth herein.

55. Defendants committed the acts alleged herein with knowledge of facts and with intentional disregard of facts that created a highly probability of injury to Lake, and (a) deliberately or recklessly proceeded to act in conscious or intentional disregard of the high probability of injury to Lake; and/or (b) deliberately or recklessly proceeded to act with indifference to the high probability of injury to Lake.

56. Defendants' conduct constitutes malice as defined in Mont. Code Ann. § 27-1-221, entitling Lake to punitive damages.

57. Defendants' conduct involved reckless or callous indifference toward Lake's federally protected rights. Defendants acted with deliberate disregard for Lake's Constitutional rights, permitting an award of punitive damages arising from Lake's § 1983 claims. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

## JURY TRIAL DEMAND

Plaintiff Nathaniel Lake demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff Nathaniel Lake prays for judgment as follows:

1. Compensatory damages, apportioned jointly and severally amongst all Defendants;
2. Punitive damages against CoreCivic and Warden McTighe;
3. Costs and disbursements incurred herein;
4. Interest;
5. Attorneys' fees; and
6. Any additional relief the Court deems just and appropriate.

Dated this 14th day of September, 2021.

By: _____
Melinda A. Driscoll
*Attorney for Plaintiff*