Timothy M. Bechtold
Bechtold Law Firm, PLLC
317 East Spruce Street
P.O. Box 7051
Missoula, MT 59807-7051
406-721-1435
tim@bechtoldlaw.net

*Attorney for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| **NATHANIEL LAKE,** | **No. 4:21-CV-00116-BMM** |
| **Plaintiff,** | **PLAINTIFF'S TRIAL BRIEF** |
| **v.** | |
| **CORECIVIC, INC., d/b/a CROSSROADS CORRECTIONAL CENTER, WARDEN PAT MCTIGHE, and DOES 1-10,** | |
| **Defendants.** | |

### INTRODUCTION

Pursuant to the United States Constitution and common law, CoreCivic

owed a duty of care to protect Nathan Lake while he was in its custody. CoreCivic

failed to meet its standard of care when it allowed a dangerous murderer with a

documented history of assaulting fellow inmates to enter Lake's pod and cell and

assault him for three and half minutes. Mr. Lake's life was forever altered following the beating he suffered on September 17, 2018, and through this trial he will be asking a jury to hold CoreCivic accountable.

## <u>LEGAL ISSUES</u>

### I.    The Court should allow limited voir dire.

Given the strong opinions potential jurors may have about the criminal justice system, prisons, rights of prisoners, and other issues attendant to this case, the undersigned requests that each side be given up to one hour to conduct voir dire of the jury panel. Defense counsel agrees that one hour per side is appropriate.

### II.    Evidence of the backgrounds and circumstances of Plaintiff Lake's custody, including his release, is relevant and admissible and it would be reversible error to "scrub" such evidence from the jury's consideration.

CoreCivic has sought to exclude from trial "any evidence regarding Plaintiff's reversal of his criminal conviction" on the grounds that such evidence would be "irrelevant" and "unfairly prejudicial." Doc. 58. The Court reserved its ruling on the issue and directed the parties to meet and confer to develop a proposed stipulation for the Court's consideration. Doc. 62. The parties have met and conferred, but have been unable to agree to a proposed stipulation as it is Plaintiff's position that there is no legal basis to exclude such evidence from trial.

A.    **In the absence of evidence that Mr. Lake's conviction was overturned, he will not be able to have a fair trial.**

Because Plaintiff Lake is bringing a civil rights and negligence action for an assault at a prison, the jury in this case will know that he is a convicted felon. Absent the ability to introduce the subsequent reversal of his conviction by the Montana Supreme Court and decision by the State of Montana to not re-try him, the jury will not know that he was legally innocent of the attempted sexual assault. If evidence of his conviction –which will be self-evident – as well as his release is not presented to the jury, the jury will *wrongly* be led to believe that Plaintiff Lake is a rightly convicted felon, and he will consequently not be viewed in a neutral manner by the jurors in this case.

In wrongful conviction cases, courts within this Circuit and across the country have consistently recognized such evidence as not only relevant and admissible but have also deemed its exclusion to constitute reversible error. *See, e.g., In re Herman Atkins*, No. 06-74094 (9th Cir. Order Aug. 22, 2006) (granting mandamus to reverse order excluding evidence of innocence from §1983 wrongful conviction trial as "evidence of actual innocence is both relevant and not subject to exclusion under Federal Rule of Evidence 403"); *Poulos, et. al v. City of Los Angeles, et. al*, No. 19-cv-496 (MWF)(AFM) Dkt. No. 224 ("Plaintiff will testify to her innocence and there will not be a scintilla of evidence otherwise, except for her now-vacated no-contest plea. Therefore, her factual innocence will be

established and is relevant.") (C.D. Cal. Aug. 29, 2022); *Parish v. City of Elkhart*, 702 F.3d 997, 999 (7th Cir. 2012) (exclusion of evidence of plaintiff's innocence from §1983 wrongful conviction trial was reversible error); *Restivo v. Hessemann*, 846 F.3d 547, 559 (2d Cir. 2017) (in §1983 wrongful conviction suit, plaintiffs' "innocence provides an important backdrop for their claims at trial"); *see also, e.g.,* *Good v. Curtis*, 601 F.3d 939, 398 (5th Cir. 2010) (holding innocence is relevant to claim that identification was fabricated); *Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014) (similar); *Halsey v. Pfeiffer*, 750 F.3d 273, 306 n.31 (3d Cir. 2014) (similar); *White v. Smith*, 696 F.3d 740, 752, 756 (8th Cir. 2012) (similar).

In *Newsome v. McCabe,* 2002 WL 548725 (E.D. Ill. April 2, 2002), the court admitted evidence that plaintiff had been pardoned by governor, reasoning:

> The issue in this case, as defendants point out, was not whether Newsome was guilty or innocent of the crime. But that is what it would have become if the fact of Newsome's innocence . . . had been kept from the jury. … Excluding that evidence [of innocence] would have been highly prejudicial to Newsome. It would have invited the jurors to draw the impermissible inference that he was actually guilty, and, thus, absolve the defendants of any misconduct.

*Newsome* at *16 (followed in *Kluppelberg v. Burge,* 84 F.Supp.3d 741 (N.D. Ill. 2015) (evidence of plaintiff's exoneration admitted to "neutralize" potential unfair prejudice to the plaintiff.)

4

Quite simply, without being informed about the subsequent reversal and release, Plaintiff Lake will be prejudiced as the jury will presume (wrongly) that he is a convicted felon.

### B.    Evidence of Lake's reversal and release is relevant to damages.

If the jury determines liability, it will be tasked with deciding damages including future medical care, past and future pain and suffering, loss of enjoyment of life, loss of chance of future employment, and past and future emotional distress damages. All of these damages necessitate the jury knowing that Plaintiff Lake's conviction was overturned and he was released from wrongful incarceration. Plaintiff's life care plan contemplates his need for medical care outside a prison environment. Whether or not someone is incarcerated even has an effect on life expectancy, with studies showing incarcerated people don't live as long. *See, e.g.,* Patterson, The Dose–Response of Time Served in Prison on Mortality: New York State, 1989–2003 (American Journal of Public Health 2013).[1]

Determination of loss of chance of future employment is decidedly different whether someone is incarcerated or not. Moreover, the fact that Plaintiff Lake is no longer a registered sex offender impacts every aspect of his life, even including where he can live.

---

[1] Available at
https://ajph.aphapublications.org/doi/full/10.2105/AJPH.2012.301148

Loss of future enjoyment damages likewise obviously differ depending on whether one is incarcerated or not, or registered as a sex offender or not. In short, the only way the jury can competently determine damages is by knowing that Lake's criminal conviction was overturned by the Montana Supreme Court and that he was thereafter released from prison and is innocent as a matter of law.

**C.    Plaintiff's Proposed Judicial Notice.**

In order to avoid delay, confusion, or unnecessary "trial within a trial" regarding the circumstances of Lake's exoneration, Plaintiff proposes the Court take judicial notice of the following facts:

1.    On November 13, 2015, the State of Montana charged Nathaniel Lake with attempted sexual intercourse without consent. Nathaniel Lake continuously maintained his innocence.

2.    The trial court judge refused to allow the jury to see potentially exculpatory DNA evidence.

3.    On September 9, 2016, a jury found Lake guilty of attempted sexual intercourse without consent.

4.    Lake appealed his conviction. On July 30, 2019, the Montana Supreme Court reversed Lake's conviction.

5.      The State declined to recharge Lake. He was released from custody on August 15, 2019 and is presumed innocent of the charges that were filed against him.

6.      Nathaniel Lake has not received any compensation from the State of Montana or any other party for wrongful imprisonment damages.


## II.    The court should allow the jury to resolve punitive damages issues to avoid unnecessary re-trial.

As a sanction for Lake's prior counsel's failure to answer discovery, supplement discovery responses, and missing case deadlines, the Court dismissed Lake's punitive damages claim. Doc. 47. Respectfully, these failures were the fault of Lake's prior counsel, not Lake (who, after all, suffered a traumatic brain injury) and therefore the sanction should have been directed at his counsel, not him. In order to preserve this issue for appeal and avoid the need for a costly re-trial, the Court should allow the jury to determine whether punitive damages are warranted and, if so, in what amount. By proceeding in this manner, if the jury determines punitive damages are not warranted, any appeal of the sanctions order will be mooted. If the jury does determine punitive damages are warranted, however, the Court will then be in a position to decide whether its discovery sanction should be modified or not and, if not, then there will be a full record for appeal. Allowing a finding on punitive damages will avoid an unnecessary retrial.

### III.    CoreCivic should be prevented from presenting any argument that its fault should be compared to the Assailant.

Montana law expressly prohibits the "empty chair defense." Specifically,

MCA § 27-1-703(6)(c) provides:

> (6)(c) Except for persons who have settled with or have been released by the claimant, comparison of fault with any of the following persons is prohibited:
> (i) a person who is immune from liability to the claimant;
> (ii) a person who is not subject to the jurisdiction of the court; or
> (iii) any other person who could have been, but was not, named as a third party.

Under the present MCA §27-1-703(6), it is well-settled that a defendant may not assert an "empty chair" defense, arguing that its own fault should be compared with the fault of non-parties. *See Cusenbary v. Mortensen*, 1999 MT 221, ¶ 62 ("we conclude that the District Court properly refused to permit the jury to apportion negligence to third party defendants who were released from liability by Cusenbary and who were impecunious and judgment-proof."); *Plumb v. District Court*, 279 Mont. 363 (1996) (superseded by statute on other grounds).

In *Plumb*, the Montana Supreme Court set out the proper procedural course for a defendant who desires apportionment of liability:

> To the extent that a party defendant is interested in a true and accurate apportionment of liability, our rules of third-party practice and § 27-1-703(4), MCA (1995), already provide the means by which contribution can be sought from those who have been unnamed by the plaintiff but who may have contributed, in fact, to the plaintiff's injuries and damages.

Rule 14(a), M.R.Civ.P., provides that a defendant may join, as a third-party defendant, anyone who may be responsible for any part of the plaintiff's claim. Section 27-1-703(4), MCA (1995), permits any party against whom a claim is asserted for negligence resulting in death or injury, to join any other party who may have contributed as a cause of the plaintiff's injury for purposes of contribution. Rule 20(a), M.R.Civ.P., has been identified as the procedural mechanism for that joinder. We conclude that apportionment of liability pursuant to these procedures would be rationally related to the Legislature's objective of assigning liability based on the degree of a party's fault for another party's damages. A person joined as a result of these procedures would be afforded the opportunity to participate in discovery, cross-examine those witnesses who blame him or her, and present evidence on his or her own behalf. Following these opportunities, which are compelled by traditional notions of fairness, any apportionment of liability to that third party is much more likely to bear some relationship to reality.

*Plumb*, 279 Mont. at 378. In sum, a defendant cannot assert that the negligence of another is responsible for the injuries to the plaintiff if the other person or entity is immune from liability. MCA §27-1-703(6)(c). When a defendant wants to assert that the negligence of another is responsible for the injuries to the plaintiff and the plaintiff has not named the other person or entity as a defendant, the defendant who would like to assert the negligence of another has to file a third-party complaint against the other to bring the other into the case. MCA §27-1-703(4).

Montana's comparative negligence statute, by its terms, applies only to instances of comparative *negligence* by multiple parties:

(4)    On motion of a party against whom a claim is asserted for negligence resulting in death or injury to person or property, any other

person *whose negligence* may have contributed as a proximate cause to the injury complained of may be joined as an additional party to the action. For purposes of determining the percentage of liability attributable to each party whose action contributed to the injury complained of, the trier of fact shall consider the negligence of the claimant, injured person, defendants, and third-party defendants. … The trier of fact shall apportion the percentage of negligence of all persons listed in this subsection. …

M.C.A. § 27-1-703(4) (emphasis added.)

"[T]here is no statutory basis in Montana for an offset of damages arising from the commission of intentional torts." *Ammondson v. Northwestern Corp.,* 2009 MT 331, ¶ 100 *citing Cartwright v. Equitable Life Assur. Soc. of the United*, 914 P.2d 976 (1996). In *Ammondson,* the Montana Supreme Court approved of the district court's refusal to allow an offset from a settled party in a case involving the intentional tort of abuse of process.

In *Groves v. Greyhound Lines, Inc.,* 79 Fed. Appx. 255 (9th Cir. 2003), the Ninth Circuit considered application of MCA § 27-1-703(6) and held it was error for the district court to compare a party's intentional conduct with another party's negligent conduct:

> The Montana Code, § 27-1-703, articulates a comparative negligence scheme and precludes the comparison of intentional conduct with negligent conduct. "All forms of conduct amounting to negligence … are to be compared with any conduct that falls short of conduct intended to cause injury or damage." *Pula v. State*, 2002 MT 9, does not support Greyhound's position because the court in Pula did not address "how to apportion blame among several liable parties." It was therefore error for the district court to allow the jury to compare Fagnani's intentional

conduct with Greyhound's negligence when determining liability for Groves's injuries.

Likewise, in *Nunez v. Watchtower Bible and Tract Society of New York, Inc. et al.,* Cause No. DV-16-84 (Mont. Twentieth Jud. Dist. Ct.), Judge Manley rejected a defendant's effort to invoke MCA § 27-1-703(6) in an intentional conduct case:

> Plaintiff correctly points out that the Defendant's negligence must be comparable to the third party's negligence. In this case, there is no alleged negligence of the third party, instead there is an alleged intentional act of the third party.

(Aug. 13, 2018 Order.)

Likewise, in *Fitzgerald v. Yellowstone County,* DV-56-2023-0000011-NE (Mont. Thirteenth Jud. Dist.), a nurse sued the county when she was assaulted by an unrestrained inmate at the hospital. The county sought to add the assailant as a third-party defendant. The district court rejected the request, explaining that Montana's comparative negligence statute does not allow comparison with an intentional tortfeasor.  (Jan. 8, 2024 Order, attached here.)

The same rationale applies here. It would be improper for CoreCivic to suggest – directly or indirectly – that the jury should apportion fault to the assailant rather than CoreCivic.

## IV.     CoreCivic should be precluded from introducing evidence or argument about collateral source benefits.

Plaintiff Lake's mental condition is directly relevant to matters at issue in this case, and therefore he does not take the position that evidence of his

determination that he is entitled to Social Security Disability benefits should be precluded from trial. But CoreCivic has gone further and designated his Social Security benefits statement as a trial exhibit. (CoreCivic proposed Ex. 520.) The Court should preclude CoreCivic from introducing collateral source benefits evidence like proposed Ex. 520, or otherwise improperly making collateral source arguments at trial.

MCA § 27-1-308(3) statutorily restricts admission of collateral source benefits, providing "[t]he jury shall determine its award without consideration of any collateral sources." The Montana Supreme Court has held that admission of collateral source evidence is so prejudicial that it warrants reversal on both liability and damages. *Mickelson v. Montana Rail Link, Inc.*, 2000 MT 111; *Thomsen v. State Dept. of Hwys* (1992), 253 Mont. 460; *Mydlarz v. Palmer/Duncan Constr. Co.* (1984), 209 Mont. 325; *Allers v. Willis* (1982), 197 Mont. 499.

Under MCA § 27-1-308(3), any reduction in a jury's award may be made only after the jury decides the full amount of compensation. Based on this well-settled law, the Court should preclude Defendant from referencing any collateral sources, including Social Security Disability benefits, at trial.

Dated this 9th day of April, 2025

/s/Timothy M. Bechtold
Attorneys for Plaintiff

12