# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| NATHANIEL LAKE,<br><br>              Plaintiff,<br><br>vs.<br><br>CORECIVIC, INC., d/b/a CROSSROADS CORRECTIONAL CENTER, WARDEN PAT MCTIGHE, and DOES 1-10,<br><br>              Defendants. | Cause No. CV-21-116-GF-BMM<br><br>ORDER |

## INTRODUCTION

The Court addresses two outstanding motions. Defendants CoreCivic, Inc., Warden Pat McTighe, and Does 1-10 ("CoreCivic") filed a motion for production of Plaintiff's opening and closing statement materials. (Doc. 120.) Plaintiff Nathaniel Lake ("Lake") opposes the motion. (Doc. 126.) CoreCivic filed a motion for judgment as a matter of law and, in the alternative, motion for a new trial. (Doc. 128.) Lake opposes the motion. (Doc. 136.) The Court held a hearing on the motions on July 17, 2025. (Doc. 145.)

## BACKGROUND

1

The Court will not repeat the details of this case at length. *See Lake v. Corecivic, Inc.*, 2023 WL 6379349 (D. Mont. Sept. 29, 2023). This case was tried before a jury over four days from April 21, 2025, to April 24, 2025. (Doc. 82; Doc. 89; Doc. 92; Doc. 93.) The jury returned a $27,750,000 verdict for Lake. (Doc. 101.) CoreCivic then filed various post-trial motions. The Court will address first CoreCivic's motion for production of Lake's opening and closing statement materials. The Court will address second CoreCivic's motion for judgment as a matter of law and, in the alternative, motion for a new trial.

## DISCUSSION

### I. CoreCivic's Motion for Production of Lake's Opening and Closing Statement Materials

CoreCivic asks the Court to order the production of PowerPoint slides used during opening and closing statements. (Doc. 135 at 2.) Lake opposes the motion. (Doc. 126.) The Court will order Lake to produce the PowerPoint slides.

The First Amendment of the United States Constitution creates a presumptive right of access to judicial records in civil cases. *See Courthouse News Serv. v. Planet*, 947 F.3d 581, 591 (9th Cir. 2020). Documents displayed in open court are not protected by work-product immunity. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020). Courts may order demonstrative slides to be released even where the party seeking the slides did not move the court for their production

2

at trial. *See, e.g.*, *United States v. Yandell*, 2024 WL 2209738 (E.D. Cal. May 16, 2024); *Wrice v. Byrne*, 488 F. Supp. 3d 646, 652, 679 (N.D. Ill. 2020). Courts have additionally required parties to file demonstrative exhibits used at trial to create a complete record for appeal. *See Yandell*, 2024 WL 2209738 at *1.

Federal Rule of Appellate Procedure 10 provides that a district court retains the authority to address certain issues related to the record on appeal. *See* Fed. R. App. P. 10(e)(1)(-2) (stating that, "[i]f any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly."); *see also In re HIV Antitrust Litig.*, 2024 WL 923551 (N.D. Cal. Mar. 1, 2024). The purpose behind Federal Rule of Appellate Procedure 10:

> is to ensure that the record on appeal accurately reflects the proceedings in the trial court (thereby allowing us to review the decision that the trial court made in light of the information that was actually before it), not to enable the losing party to add new material to the record in order to collaterally attack the trial court's judgment.

*United States v. Elizalde-Adame*, 262 F.3d 637, 641 (7th Cir. 2001)

The Court does not find that Lake would be prejudiced by producing the PowerPoints. "The Ninth Circuit, of course, will be aware that the demonstrative is simply an aid, and not evidence . . . the appellate court will not be misled into looking at the demonstratives as an independent source of information, but simply as an aid to understand the record testimony." *In re HIV Antitrust Litig.*, 2024 WL 923551 at

3

*3. The Court will order Lake to produce the materials used during opening and closing statements.

## II. CoreCivic's Motion for Judgment as a Matter of Law and, in the alternative, Motion for a New Trial

CoreCivic renews its motion for judgment as a matter of law arguing that there was no evidence that any CoreCivic employee acted with deliberate indifference. (Doc. 129 at 7–8.) CoreCivic also argues that Lake's expert Jennifer Crowley was unqualified to testify about Lake's shortened lifespan. (*Id.* at 8–9.) CoreCivic moves, in the alternative, for a new trial on liability based on four theories, and a new trial on damages. (*Id.* at 9–31.) The Court will address each issue in turn.

### A. CoreCivic's Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a)(1) directs a court to render judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Judgment as a matter of law proves improper if a jury verdict is supported by "substantial evidence." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). In assessing a judgment as a matter of a law a court must review all the evidence in the record and draw "all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or

4

weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### 1. Deliberate Indifference

CoreCivic argues that there was no evidence of deliberate indifference by any CoreCivic employee, which is necessary for an Eighth Amendment failure-to-protect claim. (Doc. 129 at 7.) CoreCivic contends that Lake did not present evidence that any employee knew of a substantial risk of harm from Reid Danell. (*Id.*) The Court finds that substantial evidence supported the jury's verdict.

A failure to protect claim in the prison context is established by presenting evidence that prison employee(s) acted with "deliberate indifference." *Farmer v. Brennan,* 511 U.S. 825, 843 (1994). Deliberate indifference is established by showing that prison employee(s) knew of and disregarded a "substantial risk to inmate safety." *Id.*

Lake presented substantial evidence that supported the jury's finding of deliberate indifference. Lake presented evidence that CoreCivic was required, but failed, to follow an objective inmate classification system established by the State of Montana. (*See* Doc. 130 at 77–80, 82–133; *see also* Doc. 105-13, Doc. 105-16; Doc. 106-2.) CoreCivic's failure to follow the inmate classification system resulted in a prison with higher classifications—those considered more dangerous—to be placed with lower-security prisoners, like Lake. (*See id.*; *see also* Doc. 106-7; Doc. 131 at

5

62–75.) CoreCivic also was contractually required to segregate and provide mental health services to prisoners with mental health disorders. (*See* Doc. 106-2.) Lake received a mental health diagnosis by the Montana State Hospital. (*See* Doc. 105-10.) Lake presented evidence that CoreCivic ignored that diagnosis and placed him with the general prison population where he had no access to mental health services. (Doc. 131 at 56–61.)

CoreCivic failed to segregate inmates. Lake presented evidence that CoreCivic's written policy required it to segregate inmates in different levels of pods based upon their inmate classification. (*See* Doc. 130 at 77–80, 82–133; *see also* Doc. 105-13, Doc. 105-16; Doc. 106-2.) CoreCivic employees were supposed to control movement between those pods as part of its policy. (*See* Doc. 131 at 62–75.) Reid Danell, Lake's assailant, testified that he and other inmates were able to move freely between pods. (*See* Doc. 131 at 9–16.)

Lake also presented video evidence that showed Danell moving from his pod to Lake's pod and back. (Lake's Trial Exhibit 22.) Danell's movement from his pod to Lake's pod required Danell to pass through two locked doors when he entered and exited Lake's pod. (*Id.*) Those locked doors required a CoreCivic employee to open them for Danell. The video evidence also showed Danell passing and interacting with two CoreCivic employees as he moved from his pod to Lake's pod before the assault. (*Id.*)

6

CoreCivic failed to follow protocol after the incident in the prison yard between Lake and the dog. Lake presented video evidence of inmates threatening Lake after the dog incident in plain view of a CoreCivic employee. (Lake's Trial Exhibit 21.) The CoreCivic employee sent Lake back to his pod without segregating him as an at-risk inmate following the dog incident. (*See* Doc. 130 at 39–49.) The failure to segregate Lake went against CoreCivic's protocol. (*See* Doc. 132 at 151–229.) Lake also presented video evidence that showed CoreCivic's failure to do a visual check of Lake's pod within 30 minutes of Lake's return to his pod. (Lake's Trial Exhibit 22.) The video also showed CoreCivic's failure to check Lake's cell when they did check Lake's pod. (*Id.*) The video showed two CoreCivic employees enter and exit Lake's pod without checking any of the cells in violation of CoreCivic's written policy. (*Id.*) These failures fell far short of the conduct required by CoreCivic's written policy.

The Court finds that Lake presented substantial evidence that a reasonable jury could have found a "legally sufficient evidentiary basis to find for" deliberate indifference. Fed. R. Civ. P. 50(a)(1).

### 2. Jennifer Crowley

CoreCivic also challenges the testimony of Jennifer Crowley regarding Lake's shortened lifespan, arguing that it was not disclosed before trial and fell outside her area of expertise. (Doc. 129 at 8.) CoreCivic bases its disclosure argument on

7

Crowley's initial disclosure. (*Id.*) Lake filed an amended disclosure that Lake presented to the jury. (Doc. 136 at 13.), Crowley opined about Lake's shortened life span in the amended disclosure. (*Id.*)

The Court finds CoreCivic's failure to object to the amended disclosure and to the amended disclosure's admission at trial sufficient to warrant denial. *See Marbled Murrelet v. Babbitt,* 83 F.3d 1060, 1066 (9th Cir. 1996). Lake also presented evidence from Lake's treating doctor that Dr. Zitello reviewed and supported Crowley's life care plan. (Doc. 131 at 107–108.) The Court finds that the testimony of Crowley and Dr. Zitello presented substantial evidence that a reasonable jury could have found a "legally sufficient evidentiary basis to find for" Lake. Fed. R. Civ. P. 50(a)(1).

### B. CoreCivic's Motion for a New Trial on Liability

Federal Rule of Civil Procedure 59(a) allows a court to grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court. Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940)). "The authority to grant a new trial is 'confided almost entirely to the exercise of

discretion on the part of the trial court.'" *Stewart v. Jovanovich*, 2019 WL 2300398, at *1 (D. Mont. May 30, 2019) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).

### 1. Jury Instructions and Admission of Evidence Concerning Lake's Vacated Criminal Convictions

CoreCivic argues that the jury instructions and evidence concerning Lake's vacated criminal convictions deprived it of a fair trial. (Doc. 129 at 10–15.) CoreCivic objected to instructions that suggested Lake's conviction was overturned, arguing it aroused jury sympathy and improperly invited compensation for wrongful imprisonment. (*Id.*)

A court has "substantial latitude in tailoring jury instructions." *United States v. Powell,* 955 F.2d 1206, 1210 (9th Cir. 1992). "So long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions or choice of language is a matter of discretion." *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir. 1985). "Rare is the case where the district court's errors are so grave as to 'seriously impair[ ] the fairness, integrity, or public reputation of judicial proceedings.'" *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1073–74 (9th Cir. 2020) (quoting *Hoard v. Hartman*, 904 F.3d 780, 787 (9th Cir. 2018)) (alteration in original).

9

The Court recognizes that Lake's conviction, incarceration, and the Montana Supreme Court vacating that conviction presented delicate issues. The jury needed to be instructed accordingly. The Court first addressed this issue in a Motion in Limine. (*See* Doc. 65.) The Court directed the parties "to meet and confer to develop a proposed stipulation for the Court's consideration to resolve" the issue. (*Id.* at 6.) The Court and the parties worked through multiple iterations of Preliminary Instruction No. 3 via a telephonic status conference before trial and at the pretrial conference. (*See* Doc. 81; Doc. 82.) CoreCivic objected to the final version and preserved the issue for appeal. (*See* Doc. 81; Doc. 82.)

CoreCivic also makes a tangential argument to the mention of "wrongful conviction" and "wrongfully imprisoned" at trial by Lake's stepfather and Lake. (Doc. 129 at 14–15; *see also* Doc. 131 at 187, 197, 222) CoreCivic's counsel raised the issue on day 3 of the trial. (*See* Doc. 132 at 5–6.) The Court directed the witnesses not to mention "wrongful conviction" again. (*Id.*) No witness made any further mention of "wrongful conviction." (*See* Doc. 132; Doc. 133.) The Court provided the jury with an abridged version of Preliminary Instruction No. 3 during final jury instructions. (*See* Doc. 94 at 3–4.) The Court instructed the jury that "[t]he Montana Supreme Court reversed and vacated Mr. Lake's conviction" and "[d]efendant CoreCivic bears no responsibility related to events surrounding Mr. Lake's criminal trial in Montana state district court, Mr. Lake's conviction being vacated by the

Montana Supreme Court, or the fact that Mr. Lake had been incarcerated." (*Id.*) The Court will deny CoreCivic's motion as to this issue as the instruction "fairly and adequately cover the issues presented." *Echeverry*, 759 F.2d at 1455.

### 2. Lake's Counsel's Conduct

CoreCivic argues that Lake's counsel's repeated calls for punitive financial action denied it a fair trial. (*Id.* at 9.) CoreCivic contends that despite the dismissal of punitive damages claims, Lake's counsel introduced CoreCivic's financial information and urged the jury to punish CoreCivic based on its revenue. (*Id.* at 12.)

A court may order a new trial based on the misconduct of counsel "if the 'flavor of misconduct sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" *Maxwell v. Cnty. of San Diego*, 714 F. App'x 641, 645 (9th Cir. 2017) (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002)).

The Court will deny CoreCivic's motion on this issue. CoreCivic did not move to exclude or object to evidence of its revenue. CoreCivic's contract with the State of Montana was admitted without objection before trial. (*See* Plaintiff's Trial Exhibit 42.) That contract contained CoreCivic monthly revenue from the Shelby prison. (*Id.*) CoreCivic also failed to object to Lake's counsel discussing its revenue in opening and closing statements. (*See* Doc. 131; Doc. 134.) Lake's use of CoreCivic's contract with the State of Montana was proper and relevant. The contract was used

11

to demonstrate what services CoreCivic agreed to provide the State of Montana in exchange for payment. The contract was also relevant in showing that CoreCivic had the financial capacity to staff and operate the Shelby prison adequately.

The Court also instructed the jury to consider only the evidence presented and to weigh it impartially, without bias or prejudice, to return a just verdict. "[A] jury is presumed to follow the trial court's instructions." *Deck v. Jenkins*, 814 F.3d 954, 979 (9th Cir. 2016) (citing *Weeks v. Angelone,* 528 U.S. 225, 234 (2000)). Instruction Number 4 directed the jury to rely on the evidence presented and that "[s]tatements made by the lawyers are not evidence and should not be considered as such by you." (Doc. 95 at 5.) Instruction Number 6 directed the jury to "return a just verdict, based solely on the evidence" and that "you render a fair decision based on the evidence, not on biases" (*Id.* at 7.) Instruction Numbers 18 and 19 instructed the jury on damages, if they rendered a verdict for the Plaintiff on specific compensable categories "based upon evidence and not upon speculation, guesswork or conjecture" and exercising "calm and reasonable judgment." (*Id.* at 22–23.) The Court does not find that Lake's counsel's conduct influenced the jury to render a verdict "by passion and prejudice." *Maxwell*, 714 F. App'x at 645.

### 3. Erroneous Jury Instructions

CoreCivic asserts that the jury was not properly instructed on *Monell* liability, deliberate indifference, and causation. (*Id.* at 15.) The instructions allowed for

12

vicarious liability, contrary to *Monell*, and misstated the standard for deliberate indifference, suggesting an objective rather than a subjective awareness of risk. (*Id.* at 19.) CoreCivic contends that the causation instructions failed to require proof of actual and proximate cause. (*Id.* at 20.) CoreCivic's argument focuses on Instructions Number 8, 11, and 13. Instruction Number 8 instructed the jury on the elements Lake needed to prove to prevail on his § 1983 claim. (*See* Doc. 94 at 9.) Instruction Number 11 instructed the jury on deliberate indifference. (*Id.* at 13.) Instruction Number 13 instructed the jury on causation. (*Id.* at 15.)

CoreCivic did not object at trial to Instruction Number 8. (*See* Doc. 132; Doc. 133.) CoreCivic also did not request a jury instruction regarding *Monell* liability factors. (*See* Doc. 76; Doc. 78.) CoreCivic has waived the issue. Fed. R. Civ. P. 51(c); *see also Norian Corp. v. Stryker Corp.*, 252 F. Supp. 2d 945, 950 (N.D. Cal. 2002), *aff'd in part, rev'd in part and remanded*, 363 F.3d 1321 (Fed. Cir. 2004) (citing *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1281–84 (Fed.Cir.2000)).

The Court fails to see how a *Monell* liability instruction would have changed the outcome, even entertaining CoreCivic's argument. The verdict form contained two legal claims: (1) the failure to protect under the Eighth Amendment violation, deliberate indifference; and (2) negligence. (*See* Doc. 101.) The Court explained to the jury that the deliberate indifference claim required a "higher standard than

negligence." (Doc. 133 at 25.) The Court further instructed the jury that if they found Lake had "proven the higher standard of deliberate indifference," then they should "go straight to damages." (*Id.* at 26.) The jury's finding that Lake had proven deliberate indifference indicates that the jury also would have found Lake had met the lesser burden of proving negligence.

CoreCivic objected to Instruction Number 11 at trial. (Doc. 132 at 233–36.) The Court resolved the objection by removing "and assault other inmates" from the end of the final sentence. (*Id.*; *see also* Doc. 94 at 13.) "A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in evidence." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Lake's theory was that CoreCivic acted with deliberate indifference by allowing Danell to travel freely between pods. Lake presented testimony from Danell, video evidence showing Danell traveling between pods and past two CoreCivic employees, and evidence that the CoreCivic employee responsible for controlling prisoner movement had a hearing disability. (*See* Doc. 131 at 9–28; Lake's Trial Exhibit 22; Doc. 132 at 216–17.) The Court finds the deliberate indifference instruction was proper as it had "foundation in evidence." *Jones*, 297 F.3d at 934.

CoreCivic failed to object to Instruction Number 13 at trial. (*See* Doc. 132 at 232–39.) CoreCivic has waived this issue. Fed. R. Civ. P. 51(c). CoreCivic also jointly proposed Instruction Number 13. (*See* Doc. 78 at 29.) CoreCivic bases its

14

argument on the theory that there was no different causation instruction given regarding Lake's Eighth Amendment claim. (Doc 129 at 27.) When discussing the jury instructions and verdict form, the Court stated:

> When I explain Question 1, that's the Eighth Amendment violation, deliberate indifference, I'll explain that's a higher level of proof required there. If they answer "yes," they go straight to the damages. If they answer "no," then they have to answer the negligence question, and I'll walk them through those negligence questions. Everyone agreeable to that approach?

(Doc. 133 at 5.) Both parties agreed. (*Id.*) The Court will deny CoreCivic's motion on the erroneous jury instructions issue.

### 4. Plain Errors

CoreCivic argues that the errors in jury instructions and counsel's conduct were plain and affected the fairness of the trial, warranting a new trial to prevent a miscarriage of justice. (*Id.* at 22.)

A court may grant a new trial if: "(1) there was an error; (2) the error was obvious; (3) the error affected substantial rights; and, (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Claiborne v. Blauser*, 934 F.3d 885, 893 (9th Cir. 2019). For the reasons stated above, the Court will deny CoreCivic's motion on this issue.

## C. CoreCivic's Motion for a New Trial on Damages

CoreCivic contends that the jury's damages award was excessive and not supported by evidence, influenced by improper punitive considerations. (*Id.* at 23.) The award was based on CoreCivic's revenue rather than actual damages, violating due process, as punitive damages were not at issue. (*Id.* at 24.)

"[F]alling within the broad scope of permissible grounds for a new trial, a finding of excessive damages may warrant relief under Rule 59." *Adams v. Roberts*, 2021 WL 3545315, at *7 (D. Mont. Aug. 11, 2021). If "the amount is 'grossly excessive or monstrous', clearly not supported by the evidence, or 'only based on speculation or guesswork,'" a jury's damages award should be vacated. *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League,* 791 F.2d 1356, 1360 (9th Cir. 1986) (quoting *Handgards, Inc. v. Ethicon, Inc.,* 743 F.2d 1282, 1297 (9th Cir.1984)). A court may not, however, "grant or deny a new trial merely because it would have arrived at a different verdict." *Molski v. M.J. Cable, Inc*., 481 F.3d 724, 729 (9th Cir. 2007). A court should only do so after "having given full respect to the jury's findings, [the court] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.*

Lake presented compelling evidence that CoreCivic failed to protect him. The jury saw evidence that Lake was beaten and choked for over three and one-half minutes. Lake remained in his cell unconscious after the beating before he was

16

discovered. Lake was in a coma for 34 days. Medical providers suggested terminating his life support. Lake spent an additional 3 months in the ICU suffering from a brain bleed, pressure wounds and blisters, aspiration pneumonia, a bladder infection, staph, and sepsis. Lake presented evidence that CoreCivic failed to follow Lake's discharge plan and provide Lake with necessary recovery therapy. Lake also presented evidence his permanent brain injury and how that affects Lake's everyday life now and in the future. Lake's counsel suggested in closing that the jury consider awarding Lake a verdict of "more than $50 million." Doc. 133 at 51. The Court declines to invade the province of the jury and order a new trial based on the damages award.

The Court also notes that Lake proposed a special verdict form that enumerated the types of damages. (*See* Doc. 136-1.) CoreCivic rejected that form for a single question on damages that the Court adopted. (*See* Doc. 77; Doc. 101.) CoreCivic's decision to do so contradicts its argument that "the jury plainly calculated its damages award based on punitive considerations," as CoreCivic had the opportunity to gain a better understanding of how the jury awarded damages. (Doc. 129 at 30.)

## CONCLUSION

The Court will grant CoreCivic's motion for production of Lake's opening and closing statement materials. The Court will deny CoreCivic's motion for judgment as a matter of law, and in the alternative, motion for new trial.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. CoreCivic's Motion for Production of Lake's opening and closing statement materials (Doc. 120) is **GRANTED**. Lake shall produce opening and closing statement materials by **August 15, 2025**.

2. CoreCivic's Motion for Judgment as a Matter of Law, and in the alternative, Motion for New Trial (Doc. 128) is **DENIED**.

DATED this 6th day of August, 2025.

/s/ Brian Morris

Brian Morris, Chief District Judge
United States District Court